**David SMELSCER and Mary Ruth Smelscer, Appellants,**

v.

**Pamela C. SMELSCER, Appellee.**

No. 08–93–00352–CV.

Court of Appeals of Texas, El Paso.

May 25, 1995.

Jimmy Phillips, Jr., Angleton, for appellants.

Lenette Terry, Terry & Terry, Angleton, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

### OPINION

BARAJAS, Chief Justice.

This is an appeal from an order dismissing a divorce action pending between Appellee and Kenneth Smelscer, in which action Appellants, the biological parents of Kenneth Smelscer, had intervened to seek sole managing conservatorship of the two minor children of Appellee and Kenneth Smelscer. We affirm the order of dismissal.

### I. PROCEDURAL HISTORY

On December 15, 1992, Kenneth Smelscer filed for divorce from Appellee and sought sole managing conservatorship of their two minor children. On the same day, Appellants filed a Petition in Intervention, seeking sole managing conservatorship of the minor children. On December 21, 1992, all four parties were appointed temporary joint managing conservators by agreement, with periods of possession alternating between Appellee on the one hand and Appellants and Kenneth Smelscer on the other. On January 16, 1993, Kenneth Smelscer died.

On April 8, 1993 Appellants sought and secured a temporary restraining order prohibiting Appellee from taking possession of the children, and sought to modify the temporary custody orders. On April 29, 1993, Appellants and Appellee agreed to a modification order whereby Appellants were awarded primary possession of the children and Appellee was altogether denied unsupervised possession of the children.

On June 1, 1993, the trial court, on Appellee's motion, dismissed the action in its entirety, concluding that Kenneth Smelscer's death deprived it of jurisdiction over both the divorce action and the concomitant intervention concerning the children. We agree.

### II. DISCUSSION

By a single point of error, Appellants attack the order of dismissal, claiming their action in intervention survived the divorce action into which they intervened.

The "[d]eath of a party abates a divorce action and its incidental inquiries of property rights and child custody." *Whatley v. Bacon*, 649 S.W.2d 297, 299 (Tex.1983) (orig. proceeding). "The proper procedural disposition of a divorce action when one of the parties dies is dismissal." *Id.* As a general rule, a child's grandparents cannot rely on a divorce proceeding as a surrogate for a properly instituted custody action. *Rodriguez v. McFall*, 658 S.W.2d 150, 152 (Tex.1983) (orig. proceeding).

Appellants rely on two cases in support of their claim that their action in intervention survived the divorce action into which they intervened. First, Appellants cite *Garcia v. Daggett*, 742 S.W.2d 808 (Tex. App.—Houston [1st Dist.] 1987, orig. pro-

ceeding [leave denied] ), a case wherein the intervention petition was filed and temporary custody orders entered **after** the death of the mother of the involved children. Appellants concede that *Garcia* held that the death of the mother immediately deprived the court of jurisdiction over the action, rendering subsequently entered temporary custody orders void. Appellants argue, however, that the instant case merits a different result because, unlike *Garcia*, the intervention was filed before the death of Kenneth Smelscer. To the extent that the temporary custody orders in *Garcia* were entered after the death of the mother of the involved children, we disagree.

*Garcia* is properly understood to turn not upon the temporal arrangement of death and intervention, but upon the very nature of intervention.[1] The following is instructive:

> [T]here is no indication that the aunt and uncle have filed an independent suit affecting the parent-child relationship. Nothing in this opinion is intended to preclude the filing of such a separate suit or to prevent a trial court from entering appropriate orders based on the jurisdiction conferred upon it following the filing of a proper suit.

*Garcia*, 742 S.W.2d at 810.

The foregoing reveals that the *Garcia* court contemplated a different result if the intervenors had either previously filed an independent suit affecting the parent-child relationship or if the trial court entered appropriate orders based on the jurisdiction conferred upon it following the filing of a proper suit. The above interpretation is supported by *Whatley*, 649 S.W.2d at 297, wherein grandparents filed an independent suit affecting the parent-child relationship and temporary custody orders were issued

shortly after the death of one spouse during the pendency of a separate divorce action. The Supreme Court held the orders invalid because they were entered after the divorce action was abated upon the spouse's death. *Id.* at 299. Although the independent suit affecting the parent-child relationship provided no alternative vehicle to support the orders because of defective service of citation, the Court was unconcerned that the suit affecting the parent-child relationship was filed after the death of one spouse. Thus, the Court's only temporal concern related to the divorce action. It rejected the notion that the trial court retained jurisdiction over the children pursuant to the divorce action, which action it found abated upon the death of the spouse, notwithstanding that no formal procedural action was taken on the date of death. *Id.*

■■■■ Thus, the difficulty in the case at hand is that Appellants did not initiate an original suit affecting the parent-child relationship; they merely intervened in one. When the death of Kenneth Smelscer caused the abatement of the divorce action along with the subsidiary issue of child custody, there existed no underlying suit in which Appellants could intervene.[2]

Appellants next rely on *McCord v. Watts*, 777 S.W.2d 809 (Tex.App.—Austin 1989, no writ), wherein grandparents' intervention was challenged because they did not plead facts sufficient to support an original suit affecting the parent-child relationship. Appellants claim *McCord* recognizes two species of intervention: an intervention for custody pursuant to Section 11.03(b) of the Texas Family Code[3] and an intervention by grand-

---

1. We do not imply that the temporal arrangement of death and the entry of temporary custody orders is similarly insignificant. *See infra* note 4.

2. Had Appellants initiated an original suit, its viability would be unaffected by the abatement of the divorce action upon Kenneth Smelscer's death. Appellants, however, are not without a remedy because the abatement of the divorce action does not itself prevent Appellants from now filing an independent suit.

3. Significantly, Section 11.03(b) speaks only of an original suit affecting the parent-child rela-

tionship and nowhere mentions intervention. It reads in pertinent part:

> (b) An original suit affecting the parent-child relationship seeking managing conservatorship may be brought by a grandparent or by any other person deemed by the court to have had substantial past contact with the child sufficient to warrant standing to do so, if there is satisfactory proof to the court that:
> (1) the child's environment with the parent or parents ... presents a serious and immediate question concerning the welfare of the child....

Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 1, 1987 Tex.Gen.Laws 2666, *amended by* Act of

parents merely to assert their interest in their grandchildren. Appellants claim only the latter are dependent on the underlying divorce action.

Appellants misconstrue *McCord.* Rather than recognize two species of intervention, *McCord* delineates the distinction between intervention in a divorce action and an original suit affecting the parent-child relationship. The very issue in *McCord* was whether grandparents must have standing to bring an original suit in order to intervene in a pending suit. *McCord,* 777 S.W.2d at 810. In answering that question in the negative, *McCord* found that grandparents necessarily have an interest in their grandchildren sufficient to support intervention and that they need not plead and prove the requirements of Section 11.03(b) of the Texas Family Code. *Id.* at 812. Thus, *McCord* should be read to caution against confusing intervention in a pending suit with bringing an original suit, if only because the two procedures have entirely different pleading requirements.

 The sufficiency of the parties' pleadings in the instant case is not at issue. *McCord* has little bearing on the viability of Appellants' intervention after dismissal of the divorce proceeding. Once again, the difficulty in the case at hand is that Appellants did not bring an original suit affecting the parent-child relationship; they merely intervened in one. That they may have been able to bring an original suit neither alters the character of their intervention nor obviates the need to employ the proper procedural device.[4]

Having found that there exists a meaningful distinction between intervention in a pending divorce action and bringing an original suit affecting the parent-child relationship and having found that Appellants' intervention action did not survive the abatement of the divorce action upon the death of Kenneth Smelscer, we overrule Appellants' point of error and affirm the order of the trial court dismissing the case.

KOEHLER, J., not participating.

May 17, 1993, 73rd Leg., R.S., ch. 168, § 2, 1993 Tex.Gen.Laws 321, 322 *(current version at* Tex. Fam.Code Ann. § 102.004(a) (1995). *See* Act of April 6, 1995, H.B. 655, § 1, 74th Leg., R.S.).

**4.** We think it prudent to address the assumptions that apparently motivate the parties to prosecute this appeal. Appellants will not lose temporary custody of their grandchildren merely because the divorce proceeding was dismissed. The Texas Family Code incorporates into every divorce where minor children are involved a suit affecting the parent-child relationship. *See* Tex.Fam. Code Ann. § 3.55(b) (Vernon 1993). Once a trial court in which parties initiate divorce proceedings thus acquires jurisdiction over the minor children of the marriage and enters temporary orders concerning their custody, such orders survive any subsequent dismissal of the underlying divorce action and continue in effect until a court of competent jurisdiction modifies them or provides for permanent custody of the children. *Ex parte Brown,* 382 S.W.2d 97, 98–99 (Tex. 1964); *Ault v. Mulanax,* 724 S.W.2d 824, 829 (Tex.App.—Texarkana 1986, orig. proceeding); *Benavides v. Garcia,* 687 S.W.2d 397, 399 (Tex. App.—San Antonio 1985, orig. proceeding); *McClendon v. McClendon,* 289 S.W.2d 640, 643 (Tex.Civ.App.—Fort Worth 1956). These cases reveal that a trial court's jurisdiction over minor

children is "sticky" and is a product of the continuing need to act, or to at least be able to act, in the best interest of the children.

We cannot discern from the record whether Appellants currently possess the children by virtue of the temporary custody orders entered December 21, 1992, or by virtue of an agreed modification thereto that was dictated into the record and gives to Appellants primary temporary possession. If the former, the foregoing authorities instruct that the order awarding temporary custody of the children to Appellants and Appellee jointly was unaffected by both the automatic abatement of the divorce action upon Kenneth Smelscer's death and its subsequent dismissal. If the latter, these authorities make clear that the modification order was a valid exercise of the trial court's continuing authority to act in the best interest of the children. *See, e.g., Ex parte Brown,* 382 S.W.2d at 98–99; *Ault v. Mulanax,* 724 S.W.2d at 829. Further, the cases establish that the trial court in the future can continue to act in the best interest of the children because it retains the power to modify either of the **temporary** custody orders, and it will do so until the issue of the children's **permanent** custody is raised by the proper proceedings in it or another court of competent jurisdiction. *See, e.g., Ex parte Brown,* 382 S.W.2d at 98–99.